**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JESUS CHARLES GARZA, ID # 1628279,** )<br>  Petitioner, ) | |
| vs. ) | No. 3:13-CV-1257-N (BH) |
| ) | |
| **WILLIAM STEPHENS, Director,** ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
|   Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the habeas corpus petition should be **DENIED** with prejudice.

**I. BACKGROUND**

Jesus Charles Garza (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for aggravated sexual assault in cause number F09-30636. The respondent is William Stephens, Director of TDCJ-CID.

**A.     Factual and Procedural History**

On August 17, 2009, the State indicted Petitioner for the aggravated sexual assault of a child younger than fourteen years of age on or about June 12, 2009. (Clerk's Record ("C.R."):2). He pleaded not guilty and was tried before a jury on February 9-15, 2010. (C.R.:3-4). The state appellate court recounted the evidence at trial as follows:

> Appellant is a faith healer. He also has some training in a kind of alternative therapy known as Bowen therapy. He treats his clients by manual manipulation of various parts of the body. In June 2009, appellant was seeing clients in his apartment rather than in an office. He had a room in his apartment set up as an examination room with

>    a hospital bed, a long counter, a microwave, and a sink.
>
>    In June 2009, the complaining witness, A.B., was twelve years old. She suffered from eczema, a condition that caused dry skin and blisters on her hands and ankles. A.B.'s mother heard about appellant from a neighbor, who told A.B.'s mother that appellant could cure A.B.'s eczema. A.B.'s mother made an appointment with appellant and took A.B. to his apartment on June 12, 2009. Before appellant treated A.B., he performed a demonstration of his technique on her mother. A.B.'s mother lay on the examination table, and appellant rubbed a warm liquid on her stomach. After the demonstration, appellant had A.B. strip to her undergarments and put on a hospital gown. Then he performed a massage on A.B. with her mother in the room. A.B. and her mother testified that A.B. was covered with a sheet or a blanket during the massage, such that A.B.'s mother could not see exactly what appellant was doing.
>
>    A.B.'s mother testified that A.B. made an outcry to her later that same day, after she and A.B. had returned home. She testified that A.B. told her that appellant had put his finger in her vagina. A.B. also testified at trial, and she testified that appellant touched the inside of her private part with his finger during the massage. A.B.'s mother contacted the police, and appellant was arrested a few days later.

*Garza v. State*, 2011 WL 2859998, No. 05-10-00229-CR, slip op. at *1 (Tex. App.–Dallas, July 20, 2011, pet. ref'd). The jury found Petitioner guilty and sentenced him to sixty-eight years' imprisonment. (C.R.:32; R. 5:65; R. 7:4).

On direct appeal, Petitioner alleged that: 1) the trial court erred in admitting evidence of an extraneous offense; 2) the trial court erred in admitting a search warrant and its supporting affidavit into evidence; 3) his due process rights were violated when the State elicited false testimony at the punishment phase of the trial; and 4) the evidence was factually insufficient to support his conviction. *Garza*, slip op. at *1. Petitioner's conviction was affirmed on direct appeal. *Id*. at 7. Petitioner's petition for discretionary review (PDR) was refused on December 7, 2011. *See* PD-1648-11. He did not file a petition for writ of certiorari with the Supreme Court.

2

Petitioner did not file a state writ application. Petitioner mailed his petition for federal habeas relief in this case on March 20, 2013, along with a memorandum in support. (Pet. at 10). Respondent filed a response on September 20, 2013, and furnished the state records. Petitioner's reply brief was received October 8, 2013.

**B.     Substantive Claims**

Petitioner raises the following grounds for relief in his habeas petition:

(1) the trial court erred by:

-permitting an extraneous offense to be admitted into evidence at the guilt phase of the trial (ground one); and

-permitting a search warrant containing inadmissable hearsay to be admitted into evidence at the guilt phase of the trial (ground two);

(2) the State committed misconduct by eliciting false testimony at the punishment phase of the trial (ground three); and

(3) his appellate attorney rendered ineffective assistance of counsel by failing to notify him that his petition for discretionary review had been refused (ground four).

(Pet. at 6-7).

## II. STATUTE OF LIMITATIONS

**A.     Antiterrorism and Effective Death Penalty Act of 1996**

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-

year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D).

Petitioner did not file any petition for writ of certiorari with the United States Supreme Court after his PDR was refused by the Court of Criminal Appeals. His state conviction therefore became final for purposes of § 2244(d) by the expiration of the ninety-day time frame for seeking further review after the Texas Court of Criminal Appeals refused the PDR. *See Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003) (holding that, when the petitioner has halted the review process, "the conviction becomes final when the time for seeking further direct review in the state court expires" and noting that the Supreme Court allows ninety days for filing a petition for certiorari following the entry of judgment); SUP. CT. R. 13.3. Petitioner's PDR was refused on December 7, 2011, so his state conviction became final ninety days later, on March 6, 2012.

Petitioner has alleged no state-created impediment under subparagraph (B) that prevented him from filing his federal petition. Nor does he base his petition on any new constitutional right under subparagraph (C). The one-year statute of limitations is therefore calculated from the later of (A) the date Petitioner's conviction became final or (D) the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims. As to subparagraph (D), the facts supporting Petitioner's claims became known or could have become known prior to the

4

date his state conviction became final on March 6, 2012. Because Petitioner filed his petition more than one year after his conviction became final, a literal application of § 2244(d)(1) renders his March 20, 2013, filing untimely.[1]

**B.     Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added). Because Petitioner's conviction became final on March 6, 2012, the one-year statute of limitations expired on March 6, 2013. Petitioner did not file any state writ application that would toll the statute of limitations under § 2244(d)(2). He did file with the trial court a motion titled *Defendants [sic] Motion to Preserve Biological Evidence*, which is dated March 11, 2013, and was received by the trial court on March 26, 2013. (*see* www.dallascounty.org, Cause No. F09-30636). The Fifth Circuit has held that a motion for DNA testing filed pursuant to Tex. Code Crim. Proc. 64.01 is a motion for "other collateral review" that tolls the statute of limitations until its denial is affirmed by the state appellate courts. *See Hudson v. Quarterman*, 508 F.3d 236. 239-40 (5th Cir. 2007). Petitioner's motion, however, did not challenge the judgment by "potentially requiring that the trial court hold a hearing to determine whether it was reasonably probable that the convicted person would have been acquitted given the DNA results." *Id*. at 239. It only sought to have biological evidence preserved, and it was never addressed by the trial court. Furthermore, it is dated after the one-year statute of limitations expired on March 6, 2013. It therefore did not toll

---

[1] Petitioner lists that date as the date he placed the petition in the prison mailing system. (Pet. at 10). That is the date his federal petition was filed. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

the statute of limitations, and the statutory tolling provision does not save the his federal petition.

Nevertheless, the AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary circumstance prevented a timely filing. *Holland*, 130 S.Ct. at 2562, *citing Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). He bears the burden to show entitlement to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The Fifth Circuit has also stated that when a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

Petitioner asserts that his appointed counsel did not notify him that his PDR had been

6

refused, and that he did not receive notice of its dismissal from the Court of Criminal Appeals until March 19, 2013. (Pet. at 9). He acknowledges that his attorney did notify him that he was filing a PDR, and that Petitioner had one year to file a federal petition, but he did not advise him of the final decision. (Mem. at 1).

The record reflects the trial court's receipt of a copy of a August 18, 2011, letter from attorney Russ Henrichs to Petitioner advising him that he had filed a PDR and, erroneously, that Petitioner must file either his state writ or federal petition by July 19, 2012, one year after the state appellate court affirmed his conviction. The letter did emphasize the importance of meeting the one-year deadline. (*see* www.dallascounty.org, Cause No. F09-30636). The record also reflects that the Court of Criminal Appeals received a status request from Petitioner on March 13, 2013, with respect to his PDR. (*see* www.cca.courts.state.tx.us, PD-1648-11). Petitioner offers no explanation for waiting over a year and a half to ask the Court of Criminal Appeals about the disposition of the PDR. After he was informed on March 19, 2013, that his PDR had been refused, he mailed his federal petition the following day.

The Fifth Circuit has held that long delays in a petitioner's receipt of notice of state court action may warrant equitable tolling. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir.2009). In *Hardy*, the Fifth Circuit found that a petitioner who waited eleven months after filing his state writ to inquire about its status was diligent in pursuing relief and entitled to equitable tolling, where he contacted the state court twice after he did not receive a response to his first inquiry within two months, and he filed his federal petition within seven days of the notice that his writ had been denied. *Id*. at 599. In contrast, it found that a petitioner who waited ten months after filing a state writ before inquiring about its status, waited another eighteen months before making a second

7

inquiry, and filed his federal petition within forty-eight days of receiving notice that the writ had been dismissed, was not entitled to equitable tolling. *Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir.2010). In *Stroman*, the Fifth Circuit noted that the petitioner in *Hardy* had filed his state writ within three months of his conviction becoming final and had made his second inquiry within two months of his failure to receive a response to his first inquiry regarding his state writ, whereas the petitioner in *Stroman* had waited seven months after his conviction became final to file his state writ and waited eighteen months before making a second inquiry about its status. *Id*.

Here, Petitioner waited longer than both the *Stroman* and the *Hardy* petitioners to inquire about the status of his PDR. He did not receive notice of the disposition of his PDR from his attorney or the Court of Criminal Appeals directly. Furthermore, the letter from his attorney provided incorrect information about the law. Once he received notice that the PDR had been denied, he did file his federal petition promptly in an attempt to be timely. For these reasons, this facts in this case are closer to those in *Hardy* than *Stroman*. Petitioner is therefore entitled to equitable tolling, and his federal petition should be considered timely filed.

### III. PROCEDURAL BAR

Petitioner has raised four grounds for relief. His third ground for relief, in which he asserts that the State elicited false testimony at trial, was rejected on direct appeal because he failed to preserve error by objecting at trial or making a bill of exception. *See Garza*, slip op. at *6-7. Respondent asserts that this ground for relief is therefore procedurally barred.

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner can establish either "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal

8

claims will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). The Supreme Court has held that cause is shown for procedural default only where a petitioner can show that some objective external factor impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner has neither alleged nor demonstrated cause and prejudice for this procedural default, Accordingly, his third ground is procedurally barred.[2]

### IV. EXHAUSTION

Respondent contends that Petitioner has failed to exhaust his fourth ground for relief, ineffective assistance of appellate counsel, because he could not raise this claim before the Court of Criminal Appeals in his PDR, and he did not raise it in a state habeas application. Because it appears that Petitioner is entitled to no habeas relief on the allegedly unexhausted claim, the Court bypasses the procedural issue and proceeds to the merits of the claim. *See* 28 U.S.C. § 2254(b)(2)

---

[2] Even if considered, this claim is without merit. Petitioner asserts that the prosecution elicited false testimony from a State's witness, who testified that she had visited Petitioner for treatment in 2003, and he touched her vagina and anus. (*See* R. 5:103-08). He claims that her testimony, that she previously told a grand jury that she could not keep coming to court regarding charges she had filed against Petitioner because her husband might discover the incident, was false. Petitioner asserts she did not make that statement to the grand jury; she stated that she did not wish to prosecute because she did not want to see him, and she thought she might not win because she did not report the incident immediately. (Mem. at 8-9; *see* R. 5:113-18). The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was material. *Napue v. Illinois*, 360 U.S. at 271. There is no copy of the grand jury transcript in the record. Even assuming that the witness testified falsely regarding the reason she gave the grand jury for not prosecuting the case, Petitioner has not shown that this testimony was material. She was consistent in both her testimony to the grand jury and during trial that Petitioner had assaulted her. She was not testifying at the guilt phase of the trial, but at the punishment phase. Finally, another witness, at the guilt phase of the trial, testified that Petitioner had placed his finger in her vagina during treatment, and a third witness testified during punishment that he touched her breasts and buttocks during treatment without her request or consent. (R. 5:15; 72-76).

9

(providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Logan-Gates v. Quarterman*, No. 3:08-CV-1683-B, 2009 WL 3614481, slip op. at *7 (N.D. Tex. Oct. 29, 2009) (recognizing that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar).

## V. AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of Petitioner's state writs constitute an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

10

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI. TRIAL ERROR

Petitioner alleges that the trial court erred by admitting an extraneous offense and a search warrant and supporting affidavit into evidence at the guilt phase of the trial. (Pet. at 7; Mem. at 2-6).

### A. Extraneous Offense

In rebuttal at the guilt phase of the trial, over defense objections, the State presented evidence from an adult female who testified that she had visited Petitioner for treatment for back pain and that he had placed his finger in her vagina during the treatment. (R. 5:8-17). Petitioner asserts that this evidence was inadmissible character conformity evidence about which the defense had been given

11

insufficient notice. (Mem. at 3-5). On direct appeal, the state court of appeals held that the trial court did not err in admitting this extraneous offense because under Texas Rule of Evidence 404(b), it was admissible as evidence of intent, plan, or absence of mistake or accident. *Garza*, slip op. at *3-4; *see also Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). In particular, that court noted that defense counsel had elicited testimony during the cross-examination of the complaining witness that: 1) she was covered with a hospital gown and sheet such that her mother could not see what occurred; 2) she did not tell her mother what happened until they got home; 3) she did not like it when Petitioner hugged and picked her up; and 4) she generally does not like to be touched. *Garza*, slip op. at *3. The state appellate court also noted that during its case-in-chief, the defense called witnesses who testified that Petitioner is a faith healer with a gift from God. *Id*. at *4. Finally, the appellate court noted that defense counsel's closing argument clearly demonstrated the defense theory that the complainant that fabricated the accusation by stating that "no, I don't think, can way why [A.B.] would come in here and make up a story, but children do do it." *Id*. at *3. That court then determined that because Petitioner had presented evidence that he is a faith healer with a gift from God and that complainant had a motive to fabricate her accusation, the trial court could reasonably conclude that the extraneous offense was admissible for the limited purpose of rebutting the defensive theories. *Id*. The denial of this claim on direct appeal is not contrary to federal law.

Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude

12

that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, a petitioner must show that the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice.  The record reflects that the defense was provided pretrial notice of this, and other, extraneous offenses. (C.R.:14, 40).  The jury also received the following instruction regarding the extraneous offense:

> If you find beyond a reasonable doubt there is evidence in this case in regard to the defendant having committed an offense other than the offense for which he is on trial, you cannot consider such other offense, if any, for any purpose unless you find and believe from the evidence beyond a reasonable doubt that the defendant committed such other offense, if any, and even then you may only consider such offense, if any, to aid you, if it does aid you, in determining motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident, and for not other purpose.  You must not consider the commission of an extraneous offense, if any, as any evidence of guilt.

(C.R.:45-46). The state appellate court analyzed the evidence presented at trial, and state case law, in detail, and determined that there was no error.  Other than disagreeing with the state court's characterization of the testimony (Mem, at 4-5), Petitioner offers no argument or case law in opposition to the state court's decision.  The record reflects that the state court properly recounted the testimony elicited by defense counsel from the complaining witness and from two defense witnesses about petitioner's alleged God-given talent. (R. 3:103, 105, 108-09; R. 4:49, 54, 66). Furthermore, the jurors were given an instruction that extraneous offense testimony was only to be considered, if at all, if it was believed beyond a reasonable doubt and not as evidence of guilt. Petitioner has failed to demonstrate either trial error, or that this alleged trial error had a substantial effect or influence on the verdict,   This ground is without merit.

**B.     <u>Search Warrant and Affidavit</u>**

Petitioner next asserts that the trial court erred because it admitted into evidence a search warrant and its supporting affidavit that contained inadmissible hearsay. (Mem. at 5-7).

At trial, the trial court admitted, over the defense's objection, a copy of the search warrant

13

and supporting affidavit that was served on Petitioner at the time of his arrest. (R. 3:164-70; State's Ex. 24). On direct appeal, the state appellate court ruled that the search warrant and affidavit contained inadmissible hearsay and were admitted in error. The state court then determined that the error did not have a substantial and injurious effect or influence on the verdict. Specifically, the state court noted that most of the affidavit was a repeat of the arresting officer's testimony at trial. Furthermore, while the affidavit does mention Petitioner's prior arrest for sexual assault, it does not include any details of that arrest or charge, this reference occupies only a few lines in a five-page document, there were over 70 exhibits admitted into evidence, the State did not mention the prior arrest or the search warrant in its closing statement, and the jury was given a limiting instruction regarding extraneous offenses. *Garza*, slip op. at *4-5. This ruling is not an unreasonable application of federal law.

A federal habeas court does not review a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d at 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d at 395. Instead, Petitioner must establish that the error is not harmless. Petitioner has not made this showing because he has not demonstrated that the error had a substantial effect on the verdict. The state appellate court, applying the same harmless error standard, determined that a brief mention of a prior arrest in a written exhibit did not have a substantial effect on the verdict. That analysis was sound, and this claim is therefore without merit.

### VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, in his fourth ground for relief, Petitioner asserts that his appellate attorney was ineffective for failing to advise him when his PDR was refused by the Court of Criminal Appeals.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274

F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Assuming that counsel was ineffective for failing to advise Petitioner when his PDR was refused, Petitioner has failed to demonstrate any prejudice. The grounds for relief raised by counsel were denied on direct appeal, and the Court of Criminal Appeals refused further review. Counsel's inaction had no effect on the appellate courts' decisions. This Court has determined that Petitioner's federal petition should be considered timely and has addressed his claims. Furthermore, because there is no time limit for filing a state habeas application, Petitioner may challenge his conviction by filing a state writ at any time, if he so chooses. *See* TEX. CODE CRIM. PROC. ANN. Art. 11.07, § 3 (West 2013). This ground for relief is without merit and should be denied.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 16th day of May, 2014.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE